UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------X

Howard Thomas Porter,                        08-CV-1497
                            Plaintiff,       (CPS)

        - against -

United States of America,                    MEMORANDUM
                                             OPINION & ORDER
                            Defendant.

------------------------------------------X

SIFTON, Senior Judge.

    On October 16, 2003, Howard Thomas Porter ("Petitioner") was

convicted by a jury on three counts of transporting and shipping

child pornography in interstate commerce by computer, in

violation of 18 U.S.C. § 2252A(a)(1) and seven counts of

possession of child pornography, in violation of 18 U.S.C. §

2252A(a)(5)(B).  On May 26, 2004, I sentenced petitioner to 4

years imprisonment on each count to be served concurrently and 3

years supervised release on each count to be served concurrently.

On November 1, 2006, following a Second Circuit appeal and

remand, petitioner was sentenced again to the same period of

imprisonment and supervised release.  Presently before this Court

is defendant's *pro se* petition to vacate, set aside or correct

his sentence pursuant to 28 U.S.C. § 2255, for: (1) unfair trial;

and (2) ineffective assistance of counsel.[1]  For the reasons set

_____

    [1] Petitioner's *pro se* habeas petition also contains unfair trial claims
based on the "cumulative effect" of errors at trial.  Habeas relief may be
justified based on the cumulative effect of errors that, standing alone, would
not warrant the granting of a new trial.  *See United States v. Lumpkin*, 192
F.3d 280, 290 (2d Cir. 1999).  However, because petitioner has failed to

forth below, the petition is denied.

## BACKGROUND

The following facts are drawn from the parties' submissions and the record of the prior proceedings before the undersigned.

Between October 7, 2002 and December 2002, an undercover detective from the Wichita, Kansas Police Department, posing as the mother of a four-year-old daughter in Wichita, entered a chat room believed to be frequented by individuals interested in exchanging child pornography or engaging in sexual activities with children. Petitioner made initial contact with the detective, and several chat sessions ensued in which petitioner discussed the possibility of engaging in sexual activity with the four-year-old daughter. Petitioner also sent the detective e-mail messages with attached images of child pornography. Law enforcement officers obtained a warrant to arrest petitioner and search his home, which was executed on January 9, 2003. Among the evidence seized were computer materials containing images of child pornography and ten photographs of children, including petitioner's son. Petitioner was arraigned on January 9, 2003, and signed an unsecured bond in the amount of $150,000 in which

---

establish that there were, in fact, errors at his trial, *see infra*, petitioner's "cumulative effect" arguments have no basis in fact and fail as a matter of law. *See, e.g.*, *Joyner v. Miller*, No. 01 CIV. 2157, 2002 WL 1023141, at *13 (S.D.N.Y. Jan. 7, 2002) ("implicit in such a claim [for cumulative effect of errors] is, first, that the alleged individual errors a petitioner seeks to aggregate are actually errors") (collecting cases).

he agreed to the conditions of pretrial release set by Magistrate
Judge Azrack.

On January 30, 2003, petitioner was indicted on three counts
of transporting child pornography through interstate commerce.
The indictment was superseded by a fourteen-count indictment on
April 23, 2003, charging petitioner with three counts of
transporting and shipping child pornography in interstate
commerce by computer in violation of 18 U.S.C. Sections
2252A(a)(1), 2252A(b)(1), and 3551 *et seq.*, and eleven counts of
possession of child pornography in violation of 18 U.S.C.
Sections 2252A(a)(5)(B), 2252A(b)(2), and 3551 *et seq*.

Trial by jury commenced on October 7, 2003, and on the
government's motion, one count of possession of child pornography
was dismissed.  On October 16, 2003, the jury acquitted
petitioner on three counts of possession, found petitioner guilty
on the remaining seven counts of possession, and found petitioner
guilty on all three counts of transportation.

Petitioner appealed his conviction and sentence to the
Second Circuit.  On June 5, 2006, the Second Circuit affirmed the
conviction but remanded to the undersigned for sentencing,
pursuant to *United States v. Fagans*, 406 F.3d 138 (2d Cir. 2005).
*United States v. Porter*, 184 Fed. Appx. 112, 115 (2d Cir. 2005).
On November 1, 2006, petitioner was resentenced to 4 years
imprisonment and 3 years supervised release.  Petitioner appealed

the November 1, 2006 sentence to the Second Circuit.  On July 20, 2007, the Second Circuit affirmed the November 1, 2006 sentence. *United States v. Porter*, 239 Fed.Appx. 664 (2d Cir. 2007).  This petition for a writ of habeas corpus followed on April 8, 2008.

## DISCUSSION

A petitioner moving for a writ of habeas corpus under 28 U.S.C. Section 2255 in only entitled to relief "for constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice." *Graziano v. United States*, 83 F.3d 587, 590 (2d Cir. 1996) (internal quotation marks and citations omitted).  In this case, petitioner claims two of his constitutional rights have been violated: (1) his Sixth Amendment right to a fair trial and (2) his Sixth Amendment right to adequate counsel.

Unfair Trial

The Sixth Amendment to the United States Constitution guarantees the right to a fair trial.[2]  Petitioner argues that he was deprived of a fair trial because:  (1) the Government did not meet its discovery burdens with respect to an internet instant

---

[2] "The Sixth Amendment . . . is designed to prevent unfair trials." *Michigan v. Harvey,* 494 U.S. 344, 369 (1990).  The Sixth Amendment states: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district where in the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; [and] to have compulsory process for obtaining witnesses in his favor . . ."

messenger conversation, (2) the trial judge's conduct was biased and prejudicial, and (3) the prosecution made improper remarks during opening and closing statements causing petitioner's trial to be fundamentally unfair.

*1. Procedural Bar*

Petitioner is procedurally barred from asserting his unfair trial claims on habeas review.  Petitioner claims that the government denied him discovery of the procedures used for creating a transcript of instant messenger conversations with an undercover detective and that, because he was denied this discovery, petitioner was unable to "pursue an alternate trial strategy" involving challenging the admissibility of the transcript.  However, petitioner raised and the Second Circuit considered on appeal the argument that the government did not meet its discovery obligations, as well as the argument that the transcripts were inadmissible.  *Porter*, 184 Fed.Appx. at 115.  "[A] [s]ection 2255 petition cannot be used to relitigate questions which were raised and considered on direct appeal . . . Reconsideration is permitted only where there has been an intervening change in the law and the new law would have exonerated a defendant had it been in force before the conviction was affirmed on direct appeal." *United States v. Sanin,* 252 F.3d 79, 83 (2d Cir. 2001) (internal citations and quotation marks omitted).  There has been no change in law or new law passed that

would exonerate the petitioner.  Accordingly, petitioner's
argument is procedurally barred.

Second, petitioner argues that both my conduct and that of
the government at trial prejudiced him in the eyes of the jury.
However, petitioner is barred from asserting these arguments on
habeas review because he failed to raise them on appeal.  In
general, where a defendant fails to raise an issue on direct
appeal, the issue may not subsequently be raised via a § 2255
petition. *Rosario v. United States,* 164 F.3d 729, 732 (2d Cir.
1998), *see also United States v. Munoz*, 143 F.3d 632, 637 (2d
Cir. 1998) ("A motion under § 2255 is not a substitute for an
appeal").  There is an exception to this rule. "Where a criminal
defendant has procedurally forfeited his claim by failing to
raise it on direct review, the claim may be raised in a § 2255
motion only if the defendant can demonstrate either: (1) cause
for failing to raise the issue, and prejudice resulting
therefrom, or (2) actual innocence." *Rosario,* 164 F.3d 729
(internal quotations and citations omitted).  Petitioner does not
state why he did not raise these arguments on appeal, nor does he
show any cause for such failure.  Further, petitioner does not
allege that he is "actually innocent."  As a result, petitioner
is procedurally barred from raising both arguments on habeas
review.

*2. Merits of Unfair Trial Claims*

Even if petitioner were not procedurally barred from raising these claims, his unfair trial claims are without merit. The Second Circuit concluded that petitioner has adduced no evidence that the government failed to comply with its discovery obligations under Federal Rule of Criminal Procedure 16.[3] *See Porter*, 184 Fed.Appx. at 115. Even if the government were required to provide the discovery requested concerning the instant messenger transcripts, any such failure to provide the discovery did not result in prejudice to petitioner or error at trial. Petitioner contends that had the government disclosed to him the method by which the instant messenger transcripts were prepared, he would have objected to admission of the transcripts on the grounds of authenticity and the best evidence rule. However, as set forth *infra*, these issues were nevertheless considered at trial, and the transcripts were deemed to comply with the authenticity requirements of Federal Rule of Evidence 901 ("Rule 901") and the best evidence requirements of Federal Rule of Evidence 1004 ("Rule 1004").

Petitioner's argument concerning the authenticity of the

---

[3] Federal Rule of Criminal Procedure 16 provides in relevant part: "Upon a defendant's request, the government must permit the defendant to inspect . . . documents . . . or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant."

instant messenger conversation transcript is based on the
District of Nebraska's holding in *United States v. Jackson* that
when a document is a duplicate created through a cut-and-paste
method on a word processing computer program, the prosecution has
the burden to show that the document is authentic.  488 F.Supp 2d
866, 871 (D. Neb. 2007).  "Rule 901 requires that a witness
authenticate evidence to support a finding that the matter in
question is what its proponent claims it to be." *Porter,* 184
Fed.Appx at 115 (internal citations omitted).[4]  Here, the
prosecution offered in evidence transcripts of the instant
messenger conversations in the form of a Word Perfect document
created using a cut-and-paste method, which preserved the
conversations in their entirety.[5]  The government met its
authentication burden when its own witness, as well as

---

[4] Rule 901 provides in relevant part: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

[5] At trial, the detective who created the transcript described the cut-and-paste method as follows:

[Detective]: . . . Yahoo has a feature that archives your messages but as the conversations would complete each time, I would save it.  Cut and paste it, save it to a file.

COURT: What do you mean cut and paste it?

[Detective]: Highlight the chat itself.  Save it and then move it over. I usually use a note pad to save the files in.

COURT: What do you mean a note pad?

[Detective]: A note pad is a program on the computer, Your Honor, that you can place text.

*See* Trial Transcript ("Tr.") at 93.

- 9 -

petitioner, acknowledged the authenticity of the transcripts at trial. *Id; see also* Tr. at 94-95, 126-27, 130-32, 225-26 (detective's testimony that he recognized the transcripts as the conversations he had with petitioner over instant messenger); Tr. 452-53, 458 (petitioner's testimony that the transcripts were accurate). Therefore, the transcripts of the instant messenger conversations met the requirements of Rule 901.

Petitioner also argues that the cut-and-pasted instant messenger conversation transcript fails to satisfy the best evidence requirements of Rule 1004.[6] When an original is not available, the Second Circuit has held that "secondary evidence may be admitted in lieu of the original provided that the original has not been lost, destroyed or become unavailable through fault of the proponent and provided the copy does not otherwise appear to be untrustworthy." *United States v. Knohl,* 379 F.2d 427, 441 (2d Cir. 1967). In order to demonstrate that the prosecution did not purposely prevent the production of the original evidence and prove that the duplicate accurately reflects the original evidence, the prosecution may introduce testimony from the person who created the duplicate. *United States v. Maxwell,* 383 F.2d 437, 442 (2d. Cir 1967). In this

---

[6] Federal Rule of Evidence 1004 provides in relevant part: "The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if- (1) Originals lost or destroyed. All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith; or (2) Original not obtainable. No original can be obtained by any available judicial process or procedure[.]"

case, the detective who created the cut-and-paste transcript

testified that he used a standard cut-and-paste method in order

to preserve the evidence, not purposely to avoid the production

of original evidence. Tr. at 93-95. Accordingly, the government

met its burden of establishing that the original evidence was not

unavailable due to the fault of the proponent, and admission of

the transcripts into evidence satisfied the requirements of Rule

1004.

Petitioner's claim of excessive intervention in the trial

must also be rejected. In order for a trial judge's conduct to

exceed constitutional limits, the judge's conduct must result in

significant prejudice to the defendant:

> A trial judge's intervention in the conduct of a
> criminal trial would have to reach a significant extent
> and be adverse to the defendant to a substantial degree
> before the risk of either impaired functioning of the
> jury or lack of the appearance of a neutral judge
> conducting a fair trial exceeded constitutional limits
> . . . [b]ecause even the most neutrally framed
> questions, asked solely for clarification, may elicit
> answers devastating to the defendant. Moreover, a
> trial is not rendered constitutionally unfair every
> time a trial judge asks a question obviously intended
> to permit a witness to emphasize testimony helpful to
> the prosecution or clearly designed to challenge
> testimony favorable to the defense.

*Daye v. Attorney Gen. of State of N.Y.*, 712 F.2d 1566, 1572 (2d

Cir. 1983) (internal quotations and citations omitted). The

portions of the record reproduced by petitioner show only

questions asked for purposes of clarification.[7]  None of the
witness' responses to such inquiries were devastating to
petitioner.  Petitioner has not shown that any of the Court's
statements were prejudicial.

Finally, petitioner argues that statements made by the
government during opening and closing arguments were prejudicial
and resulted in an unfair trial.  "The 'prosecution and defense
are entitled to broad latitude in the inferences they may suggest
to the jury during closing arguments,' provided they do not
misstate the evidence."  *United States v. Smith*, 778 F.2d 925,
929 (2d Cir. 1985) (quoting *United States v. Suarez*, 588 F.2d
352, 354 (2d Cir. 1978)).  "[R]eversal on the basis of improper
prosecutorial statements during summation is warranted only when
the statements, viewed against the entire argument before the
jury, deprived the defendant of a fair trial."  *United States v.
Myerson*, 18 F.3d 153, 163 (2d Cir. 1994) (internal quotations and
citations omitted).

Review of the government's summation and opening argument
reveals no mischaracterization of evidence or otherwise improper
statements.  The prosecution's use of petitioner's online
statements regarding sexual acts with the four-year old daughter,

---

[7] For instance, in "Colloquy 1" of the petitioner's brief, petitioner
refers to my request that the witness clarify the meaning of internet-specific
vocabulary. Tr. at 46-47. Similarly, in "Colloquy 5," petitioner makes
reference to my request for an explanation of the workings of internet
attachments. *Id.* at 57-58.

which the petitioner argues were prejudicial, were consistent with the evidence.  In addition, because jury acquittal on a large percentage of counts weighs against a finding that a trial was unfair based on a prejudicial summation, *see Myerson,* 18 F.3d at 163, the fact that petitioner was acquitted on many of the counts with which he was charged tends to show that petitioner was not deprived of a fair trial because of any prejudice to him from the government's summation.

Ineffective Assistance of Counsel

Petitioner next claims that his trial counsel provided ineffective assistance because he: (1) did not object to the Court's allegedly improper questioning and allegedly improper statements made by the prosecution; and (2) did not seek to redact portions of the transcripts or object to their admission.

The Sixth Amendment to the United States Constitution guarantees the right to assistance of counsel in criminal defense.[8]  When a defendant claims ineffective assistance of counsel, the Second Circuit uses the framework established in *Strickland v. Washington,* 466 U.S. 668 (1984), to evaluate the claim.  *See, e.g.*, *United States v. Hernandez,* 242 F.3d 110, 112 (2d Cir. 2001).  *Strickland* provides a two-pronged test to evaluate whether a counsel's assistance was ineffective.  As the

---

[8] In relevant part, the Sixth Amendment states: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."

Supreme Court stated:

> First, the defendant must show that counsel's
> performance was deficient.  This requires showing that
> counsel made errors so serious that counsel was not
> functioning as the "counsel" guaranteed the defendant
> by the Sixth Amendment.  Second, the defendant must
> show that the deficient performance prejudiced the
> defense.  This requires showing that counsel's errors
> were so serious as to deprive the defendant of a fair
> trial . . . . In this evaluation, "counsel is strongly
> presumed to have rendered adequate assistance and made
> all significant decisions in the exercise of reasonable
> professional judgment.

*Strickland,* 466 U.S. at 687-690.

Since a strong presumption exists that an attorney acts
reasonably in the interest of his or her client, to prevail on
his ineffective assistance claim, petitioner must show clearly
unreasonable action by his attorney.  First, petitioner argues
that his counsel should have objected to the Court's inquiries
and to the government's questions, opening statement and
summation.  As discussed *supra*, the Court's inquiries were
permissible, non-prejudicial and non-objectionable, and the
government's statements which petitioner finds objectionable
contained no impropriety necessitating objection.  Further,
defense counsel did in fact make objections at appropriate times
throughout the trial.  Starting with the baseline presumption of
adequate assistance, petitioner's counsel's proper objections,
together with petitioner's failure to establish any impropriety,
show that counsel acted reasonably in handling both statements by
the government and by the Court.  Because counsel acted

reasonably, it is unnecessary to discuss whether counsel's actions prejudiced the petitioner.

Petitioner also argues that his counsel should have insisted on redacting certain sections of the instant messenger conversation transcripts because they were unduly prejudicial. However, the portions of the transcripts petitioner points to were more probative than prejudicial,[9] and petitioner is unable to satisfy the *Strickland* test because of the overwhelming amount of evidence against him.  The Second Circuit has held that a counsel's failure to object to admission of sexually explicit online conversations is not ineffective assistance of counsel in cases where there is a plethora of other such evidence. *United States v. Weisser,* 417 F.3d 336, 346 (2d Cir. 2005).  Similarly, petitioner in this case was faced with substantial quantities of other sexually explicit evidence, including online transfers of child pornography to the undercover agent, pictures of child pornography confiscated from petitioner's home computer and pornographic pictures of children confiscated from his home. Accordingly, petitioner's argument that his trial counsel did not provide him with adequate assistance is without merit and habeas relief is not available to him on that ground.

---

[9] As the Second Circuit concluded concerning the prejudice to petitioner flowing from the instant messenger transcripts, "[t]he challenged evidence was highly probative as to motive . . . [a]lthough the transcripts were prejudicial, the district court did not plainly err in concluding that prejudice did not substantially outweigh probative value." *Porter*, 184 Fed.Appx. at 114.

**CONCLUSION**

For the reasons set forth above, petitioner's application is denied and petitioner is denied a certificate of appealability because he has not made a "substantial showing of the denial of a constitutional right." *U.S. v. Outen*, 286 F.3d 622, 634 (2d Cir. 2002) (quoting 28 U.S.C. § 2253(c)(2)).  The Clerk is hereby directed to transmit a copy of the within to the parties and the Magistrate Judge.


SO ORDERED.


Dated:      Brooklyn, New York
            December 23, 2008

                              By: /S/ Charles P. Sifton (electronically signed)
                                   United States District Judge